[Civ. No. 579.   Third Appellate District.—September 1, 1909.]

AGGELER, MORRISON, HANSEN CO., Respondent, v. A. C. DAUPHINY & CO., Appellant.

ACTION FOR GOODS SOLD AND DELIVERED—CONFLICTING EVIDENCE—CONCLUSIVE VERDICT—LIMITED INQUIRY.—In an action for goods sold and delivered, where the evidence is conflicting, the court cannot go behind the verdict of the jury for the plaintiff, and it can only inquire as to whether the verdict was influenced adversely to the defendant by the introduction of incompetent or irrelevant evidence, where no other question is presented by the record.

ID.—PURCHASE THROUGH AGENT—LOCAL RIGHT OF SALE—EVIDENCE—LETTER INCLOSING ORDER—RECEIPT FROM MANUFACTURERS TO PLAINTIFF.—Where it is undisputed that the goods were ordered

by defendant through an agent, and the exclusive right of local sale for one year was given to defendant, the defendant was not prejudiced by evidence of a letter from the agent inclosing the order, nor by a receipt from the manufacturers showing a payment by plaintiff for the purchase from the manufacturers of the goods delivered to the defendant.

ID.—DEPOSITION OF AGENT—REBUTTAL OF DEFENSE—CORROBORATION OF PLAINTIFF.—The deposition of the agent was competent evidence to rebut the defense of the defendant that the goods were purchased by the defendant from the manufacturers, and not from the plaintiff, and to corroborate the witnesses for the plaintiff that it purchased and paid for the goods which were sold and delivered to the defendant.

ID.—EVIDENCE OF SOURCE OF PLAINTIFF'S TITLE NOT PREJUDICIAL.—The defendant could not be prejudiced by evidence of the source of the plaintiff's title to the goods which were sold and delivered by plaintiff to the defendant.

APPEAL from a judgment of the Superior Court of Humboldt County. G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

Henry L. Ford, and Adam Thompson, for Appellant.

Mahan & Mahan, for Respondent.

CHIPMAN, P. J.—Action for the value of certain goods, wares and merchandise alleged to have been sold and delivered by plaintiff to defendant. The cause was tried by a jury and plaintiff had the verdict for $336.30, on which judgment was entered. Defendant appeals from the judgment on bill of exceptions.

The defense on which defendant relies is set out in its answer and may be thus summarized: That about August 26, 1904, the United Breeders Company and plaintiff, through their agent, one Andrews, gave to defendant the exclusive agency for handling and selling an article called Baum's Stock Food in the city of Eureka, Humboldt county, and territory north of said city in said county, and "let the said defendant have one half carload of said Baum's Stock Food to sell," and as inducement to defendant to handle said products said Andrews as such agent "agreed that he would move (i. e., find sale for) all of said half carload that said

defendant would send for''; that relying on said promises and that ''defendant should be the exclusive agent for the handling and selling of said Baum's Stock Food (in the territory named), until all said merchandise in its possession was sold or removed,'' and that said Andrews as such agent ''would move the entire half carload of said Baum's Stock Food,'' defendant ''sent for a half carload of said Baum's Stock Food in the form of paper writing and manner as made and dictated by said Andrews, the agent of said Breeders Company and plaintiff's, and that said stock food was thereafter delivered to the said defendant under the terms as aforesaid, which is the same half car of merchandise mentioned and referred to in plaintiff's complaint''; that it was agreed that said Andrews ''should sell the same, and as long as any of said Baum's Stock Food and products was in its possession that the defendant should remain and be the exclusive agent for handling and selling the same in the said territory as aforesaid.'' It is then averred that the said Andrews did not sell all of said stock food as he agreed to do, but that defendant sold all it could so sell; that without defendant's knowledge or consent plaintiff and said United Breeders Company through their agent, Andrews, and in violation of said agreement, established another agency in said territory and placed said stock food on sale therein with their newly appointed agent, and thereupon defendant notified the said United Breeders Company and plaintiff that defendant still held some of said products and offered it to them and called upon them to take it away; that defendant has paid for all of said merchandise that it has ever sold and holds the residue subject to the order of said United Breeders Company and plaintiff.

There was evidence from which the jury might well have found that the facts were not as alleged by defendant, but were as claimed by plaintiff—namely and briefly—that plaintiff purchased from the United Breeders Company and paid for a carload of said products and took the agency for their sale in Humboldt county for one year; that finding difficulty in handling all the products plaintiff, through its agent Andrews, sold to defendant half of this carload of the goods and gave defendant the exclusive agency for one year for the territory mentioned in defendant's answer; that defend-

ant purchased the goods from plaintiff and not from the United Breeders Company, and had its dealings entirely with plaintiff in the matter; that it made payments to plaintiff on account of said sale from time to time, and that no agency other than defendant's was established in said territory until after the year had expired and after defendant had notified plaintiff that it held the goods on hand subject to plaintiff's order and refused payment therefor. We do not feel called upon to recite the evidence in the case. Defendant's counsel say in their brief: "There was some evidence that the transaction was a completed sale, there was more evidence, however, that the transaction was a conditional sale, and the title remained in the plaintiff. The erroneous admission of the evidence complained of threw so much weight in the balance against defendant that the jury brought in a verdict in favor of plaintiff." The record presents the usual conflict in the testimony found in most trials, and as it was resolved in favor of plaintiff, this court cannot go behind the verdict of the jury thereon. The only question, according to defendant's concession, is whether the verdict was influenced adversely to defendant by the introduction of incompetent and irrelevant evidence.

Plaintiff first called the president of plaintiff company who testified, without objection, to Andrews having made the sale, as plaintiff's agent, of half a carload of the stock food; that the order for the goods was dated October 26, 1904, and was in writing signed by defendant and sent in letter written by Andrews. This written order shows that the goods were the Baum's Stock Food, terms of sale four months "2% 10 das" (due in four months, 2 per cent off if paid in ten days); it stated on its face that freight to San Francisco was to be deducted and that defendant was to be allowed "$75 per month to pay salary to any salesman they (defendant) choose to select. The amount of said salary to be deducted from bill." The goods were to come from Chicago and hence the agreement to deduct freight to San Francisco. The witness testified that after making these deductions there remained due a balance of $336.30. Witness Morrison, vice-president of plaintiff company, testified to the receipt of defendant's written order and that the instructions to Andrews were to sell a half a carload of the goods, giving the purchaser

the agency for "the territory of Eureka and north." "The time for which the agency was to be given was for one year, the same as we had the agency for. We allowed Mr. Dauphiny, to retain that agency for the full term of one year." He testified that in March, 1905, defendant ordered a carload of the goods, but shortly after canceled the order. "When he canceled this second order he informed us that he washed his hands of the whole matter. We did not place any other agency in this county during that period. We had the general agency for these goods for a year, and we sublet him the northern half of the county. We bought the goods and paid for them, and then sold him half of the goods and the agency for a year. The paper shown me is the receipt of the manufacturer where he was paid for a carload of goods." Andrews' letter inclosing the order was introduced over defendant's objection. We cannot see how this letter could have had any possible influence in the case one way or the other. Defendant admitted to have given the order through Andrews.

The deposition of Andrews was admitted in evidence, and the testimony which defendant claims was prejudicially erroneous came out in this deposition. The witness testified to his having sold to plaintiff, in October, 1904, a carload of the Baum products for the United Breeders Company of Chicago as its Pacific coast representative; that the Breeders Company was to allow them to deduct the freight from their bill and allow them $75 per month for four months to pay the salary of a salesman, and gave them the agency for these products for Humboldt county for one year from date. "Mr. Aggler thought that this was a pretty large order and suggested that I sell for them half of the car at Eureka, and allow the agent at that point half the salary for two months, being $75 per month . . . and also give them the agency for Baum's products in Eureka and north of Eureka in Humboldt county for one year from date." The witness identified a duplicate of the order given by plaintiff to the United Breeders Company of Chicago for this carload of goods, and testified to plaintiff's having paid in full for the goods, exhibiting the receipt. The bill for the goods as "Exhibit A," and the receipt showing payment, as "Exhibit B" were attached to the deposition and return as part thereof. The witness also

testified to the circumstances and facts attending the order given by defendant, fully sustaining the claim made by plaintiff. It is not necessary to set out these facts. The objections now urged go to the competency and relevancy of the facts above narrated. It is claimed that neither defendant nor any of its officers were present or had anything to do with the transaction between plaintiff and the United Breeders Company. The court ruled that the evidence was admissible "upon the question whether A. C. Dauphiny & Co. took one-half the agency and one-half the order upon the same terms that Aggler, Morrison, Hansen Company took the whole products." And again the court remarked: "Of course, the real question is the transaction between the plaintiff and A. C. Dauphiny Co. It is simply to show the relations he sustained (referring to Andrews) to the company that was handling the stock food, as I take it."

It seems to me the evidence tended to rebut the defense set up in the answer which defendant later undertook to maintain by evidence introduced. Defendant claimed that the sale to it was by the United Breeders Company and not by plaintiff, and this evidence tended to show that these identical goods were sold to plaintiff in the first instance by the Breeders Company and could not have been sold by that company to defendant. Counsel for plaintiff stated in introducing the deposition that much of the deposition was in rebuttal, but he asked leave to introduce the whole deposition at that time. The testimony was also corroborative of that given by the other witnesses for plaintiff as to the transaction. It was perhaps not very material how or from whom plaintiff obtained the goods, but even so, it must be apparent that the facts as to the source of plaintiff's ownership could not have been prejudicial to defendant in the minds of the jury. The real question, as was remarked by the court, was the transaction between the plaintiff and defendant, and that question was not, in our opinion, in any degree influenced to defendant's injury by the evidence objected to.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.